WO

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Paul Edmondson,<br>Plaintiff,<br><br>v.<br><br>Pekin Insurance Company, et al.,<br>Defendants. | No. CV-26-00274-PHX-SHD<br><br>ORDER |

On January 15, 2026, Defendant Pekin Insurance Company ("Pekin") removed this case from Maricopa County Superior Court ("Superior Court"). (Doc. 1.) Plaintiff Paul Edmondson then moved to remand this action to the Superior Court for lack of subject matter jurisdiction. (Doc. 9.) Because Pekin has not carried its burden of proving that the amount in controversy exceeds $75,000, the motion will be **granted.**

## I. BACKGROUND

Edmondson owns a home in Prescott, Arizona, insured under a homeowner's policy (the "Policy") issued by Pekin. (Doc. 9 at 2; Doc. 9-1 at 3.) On April 4, 2024, the home sustained damage from a fire, and Edmondson submitted a claim for the loss. (Doc. 9 at 2; Doc. 9-1 at 4.) A dispute arose over the value of the loss. (Doc. 9 at 2.) Edmondson's public adjuster estimated the damage at $231,828.18, while Pekin issued payment of

$116,858.39. (Doc. 9 at 2; Doc. 9-1 at 44, 48.) Pursuant to a provision in the Policy, Edmondson demanded appraisal to resolve the parties' disagreement over the amount of the loss. (Doc. 9 at 2.) The matter proceeded through appraisal, and Pekin paid the resulting award.[1] (*Id.* at 2–3.)

Edmondson filed this action in the Maricopa County Superior Court on December 11, 2025, alleging breach of contract and breach of the covenant of good faith and fair dealing, and seeking compensatory damages, punitive damages, and attorneys' fees. (Doc. 9-1 at 2–7.) The Complaint pleads no specific dollar amount of damages. (*See id.*) Pekin removed the action to federal court, asserting diversity jurisdiction under 28 U.S.C. § 1332(a) and alleging that the amount in controversy exceeds $75,000. (Doc. 1.) Edmondson now moves to remand because the amount in controversy does not meet the jurisdictional threshold. (Doc. 9.)

## II. LEGAL STANDARD

An action originally filed in state court may be removed to federal court if the district court could have exercised jurisdiction over the case in the first instance. 28 U.S.C. § 1441(a). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). There is a "strong presumption against removal jurisdiction." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (per curiam). That presumption "means that the defendant always has the burden of establishing that removal is proper, and that the court resolves all ambiguity in favor of remand to state court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (citation modified).

District courts have diversity jurisdiction over civil actions between citizens of different states where the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). In the removal context, the inquiry into the amount in controversy is not confined to the face of the complaint; district courts may also consider facts presented in the removal petition and "summary-judgment-type evidence relevant to

[1] The parties agree as to these facts. (*See* Doc. 9 at 2–3; Doc. 12 at 2.)

the amount in controversy at the time of removal." *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) (citation modified). When the amount in controversy "is not facially evident from the complaint . . . the removing party must prove, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold." *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996). "Conclusory allegations as to the amount in controversy are insufficient." *Matheson*, 319 F.3d at 1090–91.

## III. DISCUSSION

The parties do not dispute diversity of citizenship. Edmondson is a citizen of Arizona, and Pekin is a citizen of Illinois. (Doc. 1 at ¶¶ 4–5; Doc. 9-1 at 2–3.) The sole question is whether Pekin has established that the amount in controversy exceeds $75,000. Because Edmondson's Complaint pleads no specific damages, Pekin bears the burden of proving by a preponderance of the evidence that the jurisdictional amount is satisfied. *Matheson*, 319 F.3d at 1090. It has not done so.

### A. Compensatory Damages

Edmondson asserts that because his contract damages have been paid through the appraisal process, he seeks only $6,500 in compensatory damages, as payment for certain appraisal fees and costs. (Doc. 9 at 5.) Pekin argues that Edmondson's complaint seeks "the amount withheld from Plaintiff's insurance loss," and therefore the amount in controversy is at least the difference between his adjuster's June 2024 estimate of $231,828.18 and Pekin's own pre-appraisal payment of $116,858.39. (Doc. 12 at 2, 4.) But Edmondson does not seek the difference between the $231,828.18 estimate and Pekin's original $116,858.39 payment, because the parties engaged in the appraisal process and Pekin paid the appraisal award, facts which Pekin does not dispute.[2] (*Id.*) Pekin's related

---

[2] The briefing does not include the amount of the final appraisal award, only that Pekin paid it. The timeline of events—that is, when the appraisal process was completed relative to the filing of the complaint and removal—is also not clear from the face of the complaint and the parties do not clarify the timing in their briefing. (*See generally* Docs. 9, 12.) There is some indication, however, that the appraisal occurred before the complaint was filed. (*See* Doc. 12 at 2 (arguing that "before filing the complaint" Edmondson

argument that the Policy's dwelling and personal-property limits exceed the jurisdictional threshold fails for the same reason—the appraisal award renders those limits irrelevant, and Pekin offers no evidence that any portion of them remains at issue. *See Valdez*, 372 F.3d at 1117.

The only concrete evidence Pekin submits of any dispute regarding compensatory damages is a September 2025 estimate of $21,811.56 to replace Edmondson's boiler system. (Doc. 12 at 2, 4; Doc. 12-2 at 4.) Edmondson represents that the boiler was mistakenly valued by the appraisal panel and will be corrected through that same appraisal process and thus is not part of this litigation. (Doc. 13 at 2–3.) Even assuming the boiler estimate were added to Edmondson's claimed $6,500 in compensatory damages, the total—$28,311.56—falls far short of $75,000.

**B. The Tier 2 Certification**

Pekin next argues that Edmondson's certification of this case as a "Tier 2" case under Rule 26.2 of the Arizona Rules of Civil Procedure establishes that at least $50,000 is in controversy. (Doc. 12 at 4.) This argument fails.

A Tier 2 designation does not establish that any particular amount is in controversy. Under the Arizona Rules of Civil Procedure, "cases should be considered for assignment to a tier by case characteristics," and cases of "intermediate complexity"—those likely to involve more than minimal documentary evidence, more than a few witnesses, or expert testimony—are designated Tier 2. Ariz. R. Civ. P. 26.2(b), (b)(2). As a result, "tier classification is not a per se proxy for a damages amount in a complaint." *Friedman v. Kerr*, 2025 WL 2992220, at *2 (D. Ariz. Oct. 24, 2025). Edmondson asserts that he designated the case as Tier 2 based on its intermediate complexity rather than its monetary

---

requested an adjustment to the appraisal award).) Because ambiguities are resolved in favor of remand, *Hunter*, 582 F.3d at 1042, I assume that the appraisal process occurred before removal, *see Fisher v. DigitalOcean, LLC*, 2026 WL 2227141, at *1 (N.D. Cal. August 3, 2026) ("It is well established that a court must evaluate whether it has jurisdiction based on the circumstances that exist at the time the notice of removal is filed." (quotation marks omitted)).

value. (Doc. 13 at 3.) Contrary to Pekin's argument, the Tier 2 designation does not establish a per se $50,000 "floor." *See Leonard v. Safeco Ins. Co. of Am.*, 2024 WL 657055, at *4 (D. Ariz. Feb. 16, 2024) (holding that "a Tier 2 designation does not alone serve as evidence of removability").

**C. Attorneys' Fees and Punitive Damages**

Finally, Pekin's reliance on potential attorneys' fees and punitive damages is too speculative to carry its burden. As to attorneys' fees, Pekin offers no evidence of the fees Edmondson has incurred or will incur, the tasks Edmondson's counsel will perform, or counsel's hourly rates. It instead estimates that Edmondson will incur "at least $13,800" based on a generalized observation from an unrelated case. (Doc. 12 at 5 (quoting *Leonard*, 2024 WL 657055 at *4 for the proposition that "[i]n the Court's experience, it is a virtual certainty that a prevailing plaintiff in a contested contract action will incur more than $13,800 in compensable attorney's fees").) This does not satisfy the Defendants' burden at this stage. *See Ogden v. Dearborn Life Ins. Co.*, 644 F. Supp. 3d 559, 564 (D. Ariz. 2022) (finding a defendant's affidavit setting forth an estimate of attorneys' fees, and its discussion of the potential work the attorneys would undertake, insufficient to establish by a preponderance of the evidence that the plaintiffs' attorney fees would increase the amount in controversy above $75,000). At any rate, even crediting both the $6,500 and the disputed $21,811.56 boiler estimate, a $13,800 fee award would bring the total amount in controversy to $42,111.56, well below the jurisdictional threshold.

As to punitive damages, the mere possibility that a jury might award punitive damages is insufficient to establish the amount in controversy. *Burk v. Med. Sav. Ins. Co.*, 348 F. Supp. 2d 1063, 1069 (D. Ariz. 2004). A removing party may rely on punitive damages to meet the jurisdictional threshold only where it provides "evidence of jury verdicts in analogous cases." *Id.* Pekin points to two Arizona verdicts—*Hawkins v. Allstate Insurance Co.*, 733 P.2d 1073 (Ariz. 1987), and *Nardelli v. Metropolitan Group Property & Casualty Insurance Co.*, 277 P.3d 789 (Ariz. App. 2012)—but fails to "articulate why the *particular facts* that are alleged in the instant action might warrant

extraordinary punitive damages." *See Ogden*, 644 F. Supp. 3d at 565 (holding that a defendant failed to demonstrate that punitive damages were more likely than not when it cited cases awarding punitive damages and quoted conclusory allegations from the complaint). Pekin's punitive damages argument thus amounts to a conclusory assertion that punitive damages are possible. Such conclusory and speculative statements cannot support removal. *Matheson*, 319 F.3d at 1090–91.

## IV. CONCLUSION

Because Pekin has not proven by a preponderance of the evidence that the amount in controversy exceeds $75,000, and because all ambiguities must be resolved in favor of remand, I lack subject matter jurisdiction and the case must be remanded. *See* 28 U.S.C. § 1447(c).

Accordingly,

**IT IS ORDERED** granting Edmondson's Motion to Remand (Doc. 9).

**IT IS FURTHER ORDERED** directing the Clerk of Court to remand this case to the Arizona Superior Court, Maricopa County, and close this matter.

Dated this 4th day of September, 2026.

Honorable Sharad H. Desai
United States District Judge